**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**KIMBERLY MCAFEE**                                                                    **PLAINTIFF**

**vs.**                                    **CIVIL ACTION No.: 3:18-CV-300-HTW-LRA**

**ALLSTATE INSURANCE COMPANY,
ALLSTATE PROPERTY AND CASUALTY
INSURANCE COMPANY, WILBUR JORDAN,
WILLIAM MALCOLM "MAC" HODGES, d/b/a
"ALLSTATE MAC HODGES", and
JOHN DOES 1-5**                                                                     **DEFENDANTS**

## ORDER

BEFORE THIS COURT is the plaintiff's motion to remand. Plaintiff here is Kimberly

McAfee who brings this lawsuit against the defendants herein, namely: Allstate Insurance

Company; Allstate Property and Casualty Insurance Company; Wilbur Jordan; and William

Malcolm "Mac" Hodges, d/b/a "Allstate Mac Hodges," contending that all of them collectively

are liable to her under various theories of liability in connection with the fire loss of her home,

when that home was insured under a fire policy issued by defendant Allstate Property and Casualty

Insurance Company.

Plaintiff filed this action in state court on March 7, 2018, in the Circuit Court of Lauderdale

County, Mississippi. Thereafter, however, Allstate Property and Casualty Insurance Company and

Allstate Insurance Company removed this action under Title 28 U.S.C. § 1441[1] from that state

court to this federal forum.

---

[1] Title 28 U.S.C. § 1441(a) provides in pertinent part that, ". . . any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Plaintiff, though, preferring her state forum, pursuant to Title 28 U.S.C. § 1447,[2] has submitted her motion for remand. Defendants oppose the motion, contending that this lawsuit belongs here as authorized by diversity subject matter jurisdiction, Title 28 U.S.C. §1332,[3] with the proper defendants limited to Allstate Insurance Company and Allstate Property and Casualty Insurance Company. The other defendants, say Allstate Insurance Company and Allstate Property and Casualty Insurance Company, should be dismissed, without prejudice, from this action on theories of fraudulent joinder and fraudulent misjoinder. John Does 1-5, say defendants, are merely fictitious and should not play any role here.

## I. BACKDROP

Plaintiff Kimberly McAfee (hereinafter referred to as "McAfee") filed her first amended complaint in the Circuit Court of Lauderdale County, Mississippi, on April 9, 2018. McAfee alleged causes of action for: insurance policy benefits; bad faith failure to pay benefits; bad faith denial of claims; bad faith delay; bad faith investigation; bad faith adjusting/gross negligence; breach of contract; tortious breach of contract; breach of covenant of good faith and fair dealing; negligent infliction of emotional distress; intentional infliction of emotional distress; respondeat superior; waiver; and estoppel.

---

[2] Title 28 U.S.C. § 1447(c) provides in pertinent part that: (c) [a] motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case

[3] **28 U.S.C. § 1332  Diversity of citizenship; amount in controversy; costs**
  (a)  The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—
      (1)  citizens of different States; . . .

In her complaint, McAfee named the following defendants: Allstate Insurance Company (hereinafter referred to as "AIC"); Allstate Property and Casualty Insurance Company (hereinafter referred to as "APCIC"); Wilbur Jordan (hereinafter referred to as "Jordan"); and William Malcolm "Mac" Hodges, D/B/A "Allstate Mac Hodges" (hereinafter referred to as "Hodges"). McAfee alleged her causes of action collectively against all named defendants. McAfee also sued John Does 1-5. These are fictitious entities, unidentified, whose presence may be disregarded. Title 28 U.S.C. §1441 (b)(1).[4]

APCIC and AIC removed, under 28 U.S.C. §1441, the instant lawsuit to this federal forum on May 10, 2018. In their removal papers, APCIC and AIC pled that none of the properly named and joined parties is a citizen of Mississippi. Although Jordan and Hodges are citizens of the State of Mississippi, say APCIC and AIC, their citizenship should be disregarded. Jordan, they say, as insurance adjuster, can incur no personal liability unless plaintiff has submitted evidence of gross negligence, malice or reckless disregard of the rights of the plaintiff and, continue defendants, plaintiff's complaint has not made any such factual allegation. Also, say these defendants, Jordan was, at all times, an agent for a disclosed principal; as a result, he can have no liability for the claims against the company issuing the policy which is the subject of this litigation.

Plaintiff's Complaint, according to APCIC and AIC, also fails to state a claim against Hodges. The allegations against him, defendants contend, are conclusory and are lumped with allegations against all defendants. Furthermore, add defendants, Hodges, as Jordan, would have been an agent for a disclosed principal and can have no liability for that reason, as well. These two defendants, conclude defendants, thus, are fraudulently joined.

---

[4] 1441(b)(1)provides in pertinent part: "In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded. 28 U.S.C. § 1441(b)(1).

On May 23, 2018, McAfee filed her Motion to Remand. [Docket no. 11]. In summary, her motion to remand states that her Complaint establishes a reasonable basis for this court to conclude that a reasonable possibility of recovery exists against both Jordan and Hodges. She contends that her Complaint adequately makes a showing against both Jordan and Hodges of gross negligence, malice or reckless disregard of her rights. She argues that the Allstate defendants rely on an incorrect interpretation of Mississippi law related to the liability of insurance adjusters as agents for a disclosed principal. Plaintiff thereby denies that any defendant has been fraudulently joined or, for that matter, fraudulently misjoined.

This Motion to Remand now before the court, is not the only motion ripe for resolution in this action. Also before this court are the following: Hodges' Motion to Dismiss First Amended Complaint **[Docket no. 4]**; APCIC's Motion to Dismiss First Amended Complaint or for Judgment on the Pleadings **[Docket no. 6]**; AIC's Motion to Dismiss First Amended Complaint **[Docket no. 8]**; McAfee's Motion to Stay Proceedings **[Docket no. 13]**; McAfee's Motion to Strike Answer to The Complaint's Affirmative Defenses **[Docket no. 16]**; Jordan's Motion to Dismiss First Amended Complaint **[Docket no. 19]**; and McAfee's Supplemental Motion to Stay Proceedings **[Docket no. 22]**.

These challenges, the various motions to dismiss and the motion to strike answer, may not be addressed until this court reaches a decision on McAfee's motion to remand. *See Int'l Energy Ventures Mgmt., L.L.C. (IEVM) v. United Energy Grp., Ltd.*, 818 F.3d 193 (5th Cir. 2016) (overruling district court where the court had dismissed non-diverse defendants under F.R.C.P. 12(b)(6) before ruling on the motion to remand to state court). Since the motion to remand places this court's jurisdictional embrace of this litigation in question, not only must this court forebear on these other motions, this court additionally should stay discovery or other proceedings unrelated

to the motion to remand, which this court has done. *See* [Docket no. 11 and Docket no. 15]. *See also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016) (holding that "once [the district court] determined that Mueller was improperly joined, the district court effectively dismissed IEVM's claims against him without prejudice."); *See also Alviar v. Lillard*, 854 F.3d 286 (5ᵗʰ Cir. 2017) (holding that "the dismissal of a nondiverse party over whom the court does not have [subject-matter] jurisdiction must be a dismissal without prejudice in every instance.") Both *Int'l Energy Ventures Mgmt* and *Alviar* involved the respective district court's concurrent ruling on a motion to remand and a motion to dismiss under F.R.C.P. 12(b)(6). The Fifth Circuit Court of Appeals ruled that the non-diverse parties should have been dismissed without prejudice because the court lacked diversity of citizenship subject matter jurisdiction over the misjoined defendants and remanded the cases for the entry of an order reflecting the Fifth Circuit's ruling.

## II.     THE PARTIES AND THEIR CITIZENSHIP

McAfee is an adult female citizen of Lamar County, Mississippi. AIC is an insurance company incorporated in Illinois, with its principal place of business in Illinois. AIC is duly licensed to conduct business in the State of Mississippi. APCIC is an insurance company incorporated in Illinois, with its principal place of business in Illinois. APCIC is duly licensed to conduct business in the State of Mississippi. Jordan is an adult resident of the State of Mississippi and an employee of either AIC or APCIC (McAfee's first amended complaint does not describe further the relationship between Jordan and AIC or APCIC). Hodges is an adult resident of the State of Mississippi and an agent of either AIC or APCIC (again, McAfee's first amended complaint does not further describe the relationship).

### III. FACTS

This court must "[accept] all well-pleaded facts as true and [view] those facts in the light most favorable to the plaintiff." *Jordan v. Flexton*, 729 F. App'x 282, 284 (5th Cir. 2018). Accordingly, this court looks at McAfee's first amended complaint for a recitation of the factual basis she alleges for her lawsuit.

McAfee's complaint presents the following alleged factual scenario. McAfee purchased a home[5] and insured said home with Allstate[6] in December, 2010. McAfee's brother and cousin both resided at the home on a full time basis and McAfee resided at the home on a part-time basis with her daughter.

APCIC issued a homeowner's insurance policy to McAfee with the policy number being 945803352. This policy provided, inter alia, "dwelling protection—with building structure reimbursement extended limits", "other structures protection," "personal property protection – reimbursement provision" and additional living expense. *Policy Declarations Page* [doc. no. 1-1 p. 25] McAfee made payments to Allstate through the date of the loss.

On June 1, 2017, around or about 4:38 o'clock a.m., the fire department closest to the home received a fire alarm and immediately afterwards dispatched fire vehicles to the home to extinguish the flames which were consuming the house. The fire department, though, was unable to save McAfee's home; it was a total loss. McAfee and her daughter, at the time, allegedly were in Hattiesburg, Mississippi, some 90 miles away, and, reportedly, her brother and cousin were at work at Tyson Food located some distance away from the home.

McAfee thereafter that same date, on June 1, 2017, filed a claim with Allstate. Allstate's property claims representative, Rick Gilly, upon receiving the claim, contacted McAfee the next

---

[5] McAfee's home was located at 3915 23rd Avenue, Meridian, Mississippi.
[6] McAfee refers collectively to AIC and APCIC as "Allstate".

day, on June 2, 2017. Rick Gilly requested an opportunity to take a recorded statement from McAfee on her claim. That same date, June 2, 2017, Rick Gilly inspected the remains of the home.

On June 5, 2017, McAfee first met with Jodi Rushing, Allstate's contents adjuster. McAfee continued to meet with Jodi Rushing through June 27, 2017. The focus of the meetings was to determine the list of items allegedly lost in the fire. The submitted list also contained items allegedly owned by McAfee's brother and cousin who were listed as additional insureds under the policy.

On June 7, 2017, Allstate hired an outside vendor to conduct a "cause and origin" inspection of McAfee's destroyed home. A "cause and origin" inspection, as the term implies, aims to discern the reason for a fire; where the fire started in the house; whether the fire was accidental – by human or electrical or natural means; whether the fire was intentional; if so, what proof shows as much – "v" patterns, accelerants, char depth, temperature of the fire, etc This court has not been provided with the outside vendor's report. McAfee provides no further details about the results of the independent "cause and origin" inspection.

The Meridian Mississippi Fire Department, on June 8, 2017, though, filed its own report about the fire that had destroyed McAfee's home. That report was inconclusive, finding an "unknown origin and cause" for ignition.

Allstate informed McAfee on June 9, 2017, that the home was a total loss. That same date, Allstate informed McAfee that it would pay the balance of McAfee's mortgage immediately. Allstate knew that McAfee had a mortgage through Well Fargo Home Mortgage Inc.[7].

---

[7] Wells Fargo Home Mortgage Inc. is a home mortgage lender incorporated in the State of California with its principle place of business in Iowa.

On June 26, 2017, defendant Jordan[8] called McAfee to inform her that he was the investigator assigned by Allstate to her claim. Jordan also sent a letter to McAfee asking McAfee to submit a Sworn Statement in Proof of Loss within sixty (60) days. Jordan's letter was dated June 26, 2017.

On July 1, 2017, McAfee provided a signed authorization and release in favor of Allstate. That release allowed Allstate to obtain records about McAfee and the loss. Generally, Allstate sought information about McAfee's financial status and possible criminal history.

Jordan allegedly also asked McAfee whether her ex-husband had been involved in the loss. McAfee characterizes the inquiry about her ex-husband as "lewd and inappropriate". McAfee also alleges that Jordan's questions about her ex-husband caused her to conclude that Allstate was failing to pay her claim because she is African-American. McAfee provides no other proof of racial bias, but makes the blanket statement that such questions were "intentionally and maliciously made to harass and intimidate" McAfee.

On July 17, 2017, Jordan issued a letter on behalf of Allstate, rejecting McAfee's proof of loss as "incomplete". The proof of loss had been prepared by Jodi Rushing, another Allstate employee.

Aggrieved by Allstate's failure to pay the claim, McAfee filed a complaint on July 17, 2017, with the Mississippi Commissioner of Insurance. That complaint alleged that Jordan had asked "lewd" questions of McAfee about possible involvement of her ex-husband in the house fire. The Mississippi Commissioner of Insurance forwarded McAfee's complaint to Jordan and Allstate for a response. After Jordan and Allstate responded to the Mississippi Commissioner of

---

[8] Listed in McAfee's complaint as a "SIU Investigator" for Allstate. This court is unclear what McAfee means by "SIU Investigator".

Insurance, that office forwarded those responses to McAfee, advising her that if she still felt she had a claim she should seek competent legal counsel.

On July 27, 2017, the Deputy State Fire Marshall, Kevin Butler, allegedly obtained a search warrant for McAfee's home.[9] McAfee has provided no details in her Complaint about the reason, basis, or results of the search warrant. She did, however, provide to the court a nearly illegible copy of the search warrant without the affidavit in support. *See* [Docket no. 1-1, PP. 102-103].

The provided copy of that search warrant is directed to any lawful officer of Lauderdale County, Mississippi. The affiant is Deputy State Fire Marshall II, Kevin Butler of the Mississippi State Fire Marshal Office who attested that certain discoverable unlawful items were located on plaintiff's premises, namely:

> Including but not limited to any evidence as to the cause and/or origin of the fire including, flammable liquid containers, flammable/combustible material, and fire debris. Also trace evidence including but not limited to blood, hair, fibers and fingerprints. Any and all insurance documents pertaining to the fire or fires of June 1, 2017, to include any items reported lost on an insurance claims sheet.

*Search Warrant,* [doc. no. 1-1 p. 102].

On July 28, 2017, Allstate sent a Proof of Loss to Wells Fargo. McAfee has not provided such to this court for its review. Neither has she described it. The defendants, though, submitted a copy as an Exhibit A. The document is dated September 8, 2017. It reflects in paragraphs (6), (7), and (8) the following:

> (6) The Actual Cash Value of said property at the time of loss was ….$149,683.00

> (7) The Whole Loss and Damage was ………………………………...$149,683.00

---

[9] "[W]e hold that an entry to fight a fire requires no warrant, and that once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze. Thereafter, additional entries to investigate the cause of the fire must be made pursuant to the warrant procedures governing administrative searches." *Michigan v. Tyler*, 436 U.S. 499, 511–12, 98 S. Ct. 1942, 1951, 56 L. Ed. 2d 486 (1978) (Citing *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 534, 87 S. Ct. 1727, 1733, 18 L. Ed. 2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737 (1967); *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816 (1978)).

(8) The Amount Claimed under the above numbered policy is ………..$85,231.10

[Docket no. 36-1].

On August 10, 2017, Allstate asked McAfee to submit to an Examination Under Oath. McAfee contacted her counsel, Samuel McHard, who then sent a letter to Allstate informing Allstate that he represented McAfee and requesting that Allstate and its employees retain all cellular phone records, emails, and text messages related to the loss of McAfee's home. McHard also asked for all adjuster reports, engineer reports, contractor reports, and all statements taken by Allstate. According to McAfee, Allstate refused to comply with McHard's requests.

On August 15, 2017, Allstate's counsel, Robert Stephenson (allegedly at the request of Jordan) sent McHard a letter demanding an Examination Under Oath and the production of documents. McAfee submitted to the Examination Under Oath on September 27, 2017. McAfee's brother and cousin submitted to an Examination Under Oath on October 6, 2017.

During that Examination Under Oath, attended by Attorney Samuel McHard for plaintiff and Attorney Robert R. Stephenson for APCIC, Attorney Stephenson questioned plaintiff about Jordan's alleged "lewd" and "inappropriate" question about her ex-husband and her assessment from that question that APCIC was racially biased.

> Q.      Did he accuse your ex-husband or did he simply ask whether your ex-husband could have started the fire?
>
> A.      I believe him asking is enough, so I don't know whether he accused or – I mean, if just feels like it's an accusation, that he was, you know, kind of judging my husband – my ex-husband, so, I mean, I don't know. I just – it was very rude and very, I would say, unprofessional. […]
>
> Q.      I'm asking what was the basis of the complaint?
>
> A.      I felt like I was being racially attacked because he was asking, you know, the kind of people that I hang with, would they do something like that; if my ex-husband would do something like that; if I would do something like that.

[Docket no. 36-2, PP. 4-5].

Allstate did not pay McAfee's claim in June, 2017, nor in July, 2017. McAfee, therefore, continued to make her mortgage payments on the home to Wells Fargo. On July 19, 2017, Wells Fargo sent a fax to Jordan with the payoff amount of McAfee's mortgage. Allstate issued a check to Wells Fargo on September 22, 2017, in the amount of $85,231.10 to pay the balance of the mortgage on McAfee's home. Allstate did not reimburse McAfee for payments she had made on the mortgage in June, July, and August of 2017.

On February 21, 2018, Allstate denied all of McAfee's claims by letter sent from Jordan to McAfee. That letter has not been provided, nor summarized for this court's review.

Hodges allegedly repeatedly requested that McAfee pay her insurance premiums despite the declaration of her home as a total loss. McAfee informed Hodges that the home had been declared a total loss and, on March 22, 2018, McAfee asked Hodges to send her documentation contained in her file. Hodges failed to do so.

## IV.    ANALYSIS

### a. Remand Generally

As stated above, APCIC and AIC filed their Notice of Removal on May 10, 2018. [Docket no. 1]. In that Notice of Removal, they acknowledged that complete diversity of citizenship does not exist between the parties because of the presence of Hodges and Jordan as defendants, while McAfee is a Mississippi citizen. APCIC, though, asks this court to find that McAfee named both Hodges and Jordan as defendants in an effort to prevent removal from state court to this federal forum – an effort deemed "fraudulent joinder". Alternatively, says APCIC, this court should find that Hodges and Jordan were "fraudulently misjoined".

Fraudulent Joinder and Fraudulent Misjoinder are two related, but slightly different doctrines which expand upon and explain how courts should view lack of complete diversity of

citizenship when reviewing whether the court possesses subject matter jurisdiction. Fraudulent joinder examines whether the plaintiff named a defendant in a lawsuit to avoid removal from state court to federal court. The district court, to which the action has been removed, must look at the pleadings to determine if one of two situations exist: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004)(en banc)(hereinafter referred to as "*Smallwood II*")(quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).

Fraudulent misjoinder[10], on the other hand, examines whether the plaintiff has included causes of action which are not related to each other in an effort to avoid diversity of jurisdiction subject matter jurisdiction cases. "[The court] considers whether, based on the unique

---

[10] United States District Court Judge Barbour explained the history of the fraudulent misjoinder standard as follows:
> Misjoinder of plaintiffs was first adopted by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir.1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir.2000). The Tapscott court held that "[m]isjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Id.* at 1360.
> However, mere misjoinder is insufficient to raise to the level of fraudulent misjoinder. *Id.* To constitute fraudulent misjoinder, the misjoinder must represent totally unsupported, or "egregious" misjoinder. *Id.*; *In re Diet Drugs*, No. Civ. A. 98–20478, 1203, 1999 WL 554584 at *3 (E.D.Pa. July 16, 1999). Citing *Tapscott*, the Fifth Circuit recently adopted the misjoinder of plaintiffs' theory. *In Re: Benjamin Moore & Co.*, 309 F.3d 296, 298 (5th Cir.2002) (holding that "misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction").

*Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868, 872 (S.D. Miss. 2004).
However, the doctrine does not appear to be universally applied by the courts.
> The [fraudulent misjoinder doctrine] was announced by the *Eleventh Circuit in Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), abrogated on other grounds by *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Several courts have criticized *Tapscott's* fraudulent joinder standard. *See, e.g., Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126-28 (E.D. Cal. 2004) (explaining that Tapscott's standard engenders "more procedural complexity" in removal proceedings and noting uncertainty about whether to apply federal or state joinder rules); *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842, 851-55 (S.D. Ill. 2006) (describing *Tapscott's* standard as "an improper expansion of the scope of federal diversity jurisdiction" and suggesting that courts "have foundered on shoals of tautology in trying to define fraudulent misjoinder"); *see also In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (declining to adopt or reject Tapscott's fraudulent joinder doctrine).

*Alexander v. State Farm Fire & Cas. Co.*, No. 2:18-CV-01103-RDP, 2018 WL 3956952, at *2 (N.D. Ala. Aug. 17, 2018).

circumstances at issue, there is a reasonable possibility that a Mississippi court would find that Plaintiffs' claims against [some named non-diverse defendants] were properly joined with their claims against [a diverse defendant]." *Feldman v. Rite Aid HDQTRS Corp.*, No. 5:17-CV-9-DCB-MTP, 2017 WL 1508184, at *2 (S.D. Miss. Apr. 26, 2017).

McAfee disagrees with Allstate and persists in asking this court to remand this litigation to the state court from which it originated, that is, the Circuit Court of Lauderdale County, Mississippi. According to McAfee, her claims against Jordan and Hodges, the two (2) non-diverse defendants, are viable and belong in this lawsuit, a circumstance which destroys federal litigation in this court and requires a remand of the entire litigation to state court.

"Federal courts are courts of limited jurisdiction." *Save the Bay, Inc. v. U.S. Army*, 639 F.2d 1100, 1102 (5th Cir. 1981) (citing *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908)). Removal of an action under diversity of citizenship is permitted when the district court has subject matter jurisdiction predicated on complete diversity of citizenship between the proper parties, and when the amount in controversy is met. 28 U.S.C. §§ 1332[11] and 1441[12].

---

[11] (a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--
    (1) citizens of different States;
28 U.S.C.A. § 1332 (West)
[12] (a) Generally.--Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
(b) Removal based on diversity of citizenship.—
    (1) In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded.
    (2) A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.
28 U.S.C.A. § 1441 (West)

This § 1332 jurisdictional grant, though, has a limitation: "[a] civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. §1441(b)(2). To determine if jurisdiction is appropriate, this court considers citizenship determinations and monetary disputes between the parties as set forth at the time of removal. *Manguno v. Prudential Prop. & Cas. Ins. Co*., 276 F.3d 720, 723 (5th Cir. 2002) (citing *Cavallini v. State Farm Mut. Auto Ins. Co*., 44 F.3d 256, 264 (5th Cir. 1995)).

As earlier stated, the Fifth Circuit has "recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004)(en banc)(hereinafter referred to as "*Smallwood II*")(quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir. 2003)).[13]

The test for fraudulent joinder is whether the defendant has demonstrated that plaintiff has no possibility of recovery against an in-state defendant; stated differently, when the district court has no reasonable basis to predict that the plaintiff might be able to recover against an in-state defendant. *See Smallwood II*, 385 F.3d at 573 (citing *Travis* at 648). To resolve the fraudulent joinder issue, the "court may [either] conduct a Rule 12(b)(6)-type analysis . . . [or], in its discretion, pierce the pleadings and conduct a summary inquiry." *Int'l Energy Ventures Mgmt., LLC v. United Energy Grp., Ltd*., 818 F.3d 193, 207 (5th Cir. 2016)(quoting *Smallwood II*, at 573). When conducting a fraudulent/improper joinder analysis, the federal court resolves all disputed

---

[13] In *Smallwood II* the United States Fifth Circuit Court of Appeals, sitting en banc, adopted "improper joinder" as its term of choice over the traditional term "fraudulent joinder". The court's opinion indicates that there is no substantive difference between the two terms.

questions of fact and ambiguities of law in favor of the non-removing party. *See Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

The Fifth Circuit has held that the 12(b)(6)-type analysis utilized in evaluating improper joinder "incorporates the **federal** pleading standard articulated in *Bell Atlantic Corp. v. Twombly* . . . ." *Int'l Energy Ventures Mgmt.*, 818 F.3d at 200 (emphasis in original). Plaintiff would have this court utilize the state pleading standards in conducting its analysis; however, this court is bound by Fifth Circuit precedent, and must apply federal pleading standards.

Under the federal pleading standard utilized in an improper joinder analysis, a complaint must state a "plausible claim for relief" to survive a 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, at 678. "A 'mere theoretical possibility of recovery under local law' will not preclude a finding of improper joinder." *Smallwood II*, 385 F.3d at 573 n. 9 (quoting *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n.4 (5th Cir. 2000)); *See also*, *Powell v. Target Corp.*, 2016 WL 4573974, at 2 (S.D. Miss. Sept. 1, 2016) (citing *Stewart v. Glenburney Healthcare*, 2008 WL 5412311, at 2 (S.D. Miss. Dec. 28, 2008) (citing *Badon*, 236 F.3d at 286 n.4)).

### b. Remand – Specific Arguments

This is a civil action for damages over a fire loss. The plaintiff's complaint seeks damages under an insurance policy. The complaint alleges that the claim for the loss has a value of policy limits: namely, $149,693 for the dwelling. The plaintiff also seeks damages for a loss to personal property. The plaintiff has demanded punitive damages from the defendants. "[F]ederal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages is deemed to exceed the federal jurisdictional minimum." *Anderson v. Wells Fargo Bank, NA*, 2015

WL 4775356, at *2 (S.D. Miss. 2015)(quoting *Sun Life Assur. Co. v. Fairly*, 485 F. Supp.2d 731, 735 (S.D. Miss. 2007)). The plaintiff also demands damages in an unspecified amount for emotional distress. The amount in controversy here clearly exceeds the jurisdictional minimum of $75,000, exclusive of interests and costs.

As earlier stated, Allstate contends that Jordan and Hodges are both fraudulently joined. Allstate adds that Hodges is also fraudulently misjoined.

The presence of Jordan should be disregarded, says Allstate, for the following reasons: first, the plaintiff's complaint fails to state a claim against him; plaintiff's allegations against him, says Jordan, are conclusory and are lumped in with allegations against all defendants; secondly, says Jordan, at all relevant times, he was one of the insurance adjusters for the claim which is the subject of the litigation and insurance adjusters can incur no personal liability unless there is evidence of gross negligence, malice or reckless disregard for the rights of the insured; and thirdly, adds Jordan, he was, at all times, an agent for a disclosed principal, and, as such, he can have no liability for the claims against the company issuing the policy which is the subject of the litigation as a result.

Relative to Hodges, Allstate contends that Hodges' presence should also be disregarded: first, because the plaintiff's complaint fails to state a claim against him; and secondly, to the extent that these allegations are considered, Hodges would have been an agent for a disclosed principal and can have no liability for that reason.

The allegations in the plaintiff's complaint are vague because the complaint frequently fails to identify which defendant allegedly did what; the complaint does not differentiate between defendants; and the complaint fails to articulate a recoverable distinct litigable event linking the claims against Hodges or Jordan with the claims against the other defendants.

Now is an appropriate time to render a general discussion on insurance agent liability and insurance adjuster liability. Mississippi law is clear that:

> [T]he general rule is that an agent for a disclosed principal incurs no liability for a breach of duty or a contract perpertrated by its disclosed principal and a third party. *See, Progressive Casualty Ins. Co. v. Keys*, 317 So.2d 396 (Miss. 1975); Wood v. Mississippi Power Co., 146 So.2d 546, 551 (Miss. 1962); *Shemper v. Hancock Bank*, 40 So.2d 742, 744 (Miss. 1949); *Ketcham v. Mississippi Outdoor Display*, 33 So.2d 300, 301 (Miss. 1948); *see also*, MISS. CODE ANN. § 83–21–27 (1972). Bound by *Erie*, the district courts have accordingly held that an agent of a disclosed principal, acting within the authority of his agency, will not be personally liable where a third party brings an action for a breach of contract against the principal. *Cone Mills Corp. v. Hurdle*, 369 F.Supp. 426 (N.D.Miss. 1974); *Webbs v. Culberson, Heller & Norton, Inc.*, 357 F.Supp. 923 (N.D.Miss. 1973); *Chipman v. Lollar*, 304 F.Supp. 440 (N.D.Miss. 1969). Exceptions to this general rule have been made where plaintiff has made allegations which establish a separate and independent tort against the agent. *Simpson v. M–P Enterprises, Inc.*, 252 So.2d 202, 207 (Miss. 1971); *Pittman v. Home Indemnity*, 411 So.2d 87 (Miss. 1982).

*Gray v. U.S. Fid. & Guar.*, 646 F. Supp. 27, 29–30 (S.D. Miss. 1986).

Insurance adjusters similarly "can only incur independent liability when [his/her] conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured." *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004).

    *c.  Plaintiff's Allegations Against Jordan*

        i.  <u>Gross Negligence</u>

Jordan has been identified in plaintiff's complaint as the insurance adjuster assigned by Allstate to plaintiff's loss claim. Plaintiff begins with a short discussion on the contours of gross negligence, a discussion which the court finds satisfactory:

> "There is no precise definition of gross negligence, but one of the approximate definitions may be thus expressed: Gross negligence is that course of conduct which, under the particular circumstance, discloses a reckless indifference to consequences without the exertion of any substantial effort to avoid them." *Dame v. Estes*, 233 Miss. 315, 101 So. 2d 644, 645 (1958). *See also Planters Wholesale Grocery v. Kincade*, 210 Miss. 712, 50 So. 2d 578 (1951). Gross negligence is synonymous with recklessness. *Chicago St. L. & N.O.R. Co. v. Scurr*, 59 Miss. 456, 1882 WL 4250 (1882). Reckless disregard also embraces willful or wanton conduct which means knowingly and intentionally doing an act. *Turner v. City of Ruleville*,

735 So. 2d 226 (Miss. 1999). *See also Beta Beta Chapter of Beta Theta Pi Fraternity v. May*, 611 So. 2d 889, 80 Ed. Law Rep. 755 (Miss. 1992) (willfulness and wantonness connote actual knowledge on the part of the individual charged.)

[Docket no. 12]. Then, plaintiff attempts to persuade this court that she adequately has pleaded a claim of gross negligence against Jordan.

She has not. Her complaint recognizes that Jordan's actions were performed on behalf of Allstate. In fact, throughout her complaint she couples Jordan with Allstate – she accuses both of: wrongfully failing to pay her timely; wrongfully failing to reimburse her for her June, July, and August mortgage payments to Wells Fargo; and wrongfully denying her claim without any arguable or legitimate basis.

Since she contends that Jordan and Allstate acted with malice, she says this pleading requires a jury's determination, and this claim of hers should not be addressed otherwise.

In this court's eye, case law on the pleading requirements for gross negligence disagrees with plaintiff and campaigns for a dismissal of this claim. Plaintiff has alleged actions against Jordan and Hodges for which they have no control. Jordan and Hodges are merely agents of APCIC and Allstate: they cannot disburse funds, cannot deny claims, and cannot refund payments.

   d.  *Shotgun Pleadings*

Defendant claims that the entirety of plaintiff's complaint should be disregarded because it is a "shotgun pleading" – plaintiff's complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). Shotgun

pleadings are disfavored and may give rise to Rule 11[14] sanctions. *See S. Leasing Partners, Ltd. v.*

*McMullan*, 801 F.2d 783, 788 (5th Cir. 1986)*, abrogated on other grounds.*

Plaintiff responds that defendant mischaracterizes her complaint in an attempt to stigmatize

it. Plaintiff says that "[a] 'quintessential' shotgun pleading fails to distinguish between the actions

---

[14] (a) Signature. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number. Unless a rule or statute specifically states otherwise, a pleading need not be verified or accompanied by an affidavit. The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) Sanctions.

(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) Limitations on Monetary Sanctions. The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) Requirements for an Order. An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

(d) Inapplicability to Discovery. This rule does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37.

Fed. R. Civ. P. 11

of named defendants." *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14-CV-00132-DMB, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015). According to plaintiff, her complaint specifically distinguishes between the claims that apply to each individual defendant in this lawsuit and, therefore, cannot be considered a "shotgun pleading".

Moreover, says plaintiff, "[w]hat makes a pleading an objectionable 'shotgun' pleading is the inclusion of irrelevant and unrelated facts not tied to specific causes of action such that the claims made are indeterminate and the defendant's task in defending against them is significantly impaired." *Martinez v. Nueces Cnty., Tex.*, No. 2:13–CV–178, 2013 WL 6190519, at * 4 (S.D.Tex. Nov. 26, 2013).

This court has reviewed plaintiff's complaint and finds that it contains quintessential "shotgun pleadings". McAfee's complaint alleges in her causes of action general statements that all the named defendants are responsible for the actions she alleged in her factual section. McAfee also fails to differentiate how the actions of each defendant suffice to impose liability upon the individual defendants.

e. *Causes of Action*

As this court stated above, plaintiff's First Amended Complaint names both Jordan and Hodges as defendants in the following causes of action: Bad Faith Failure to Pay Benefits, Denial of Claims, Delay, and Investigation; Bad Faith Adjusting and Gross Negligence; and Negligent and Intentional Infliction of Emotional Distress.

"Under Mississippi law, the general rule is that an agent for a disclosed principal incurs no liability for a breach of duty or a contract perpetrated by its disclosed principal and a third party." *Gray v. U.S. Fid. & Guar.*, 646 F. Supp. 27, 29 (S.D. Miss. April 21, 1986). "Exceptions to this general rule have been made where plaintiff has made allegations which establish a separate and

independent tort against the agent." *Id* at 29-30. "[A]n adjuster 'can only incur independent liability when his conduct constitutes gross negligence, malice, or reckless disregard for the rights of the insured.'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004) (Quoting *Bass v. California Life Ins. Co.*, 581 So.2d 1087 (Miss. 1991).

i. *Jordan*

McAfee alleged the following causes of action against Jordan in her Amended Complaint: Claim for Bad Faith Failure to Pay Benefits, Bad Faith Denial of Claims, Bad Faith Delay, and Bad Faith Investigation; Bad Faith Adjusting and Gross Negligence, Reckless Disregard; and Negligent and Intentional Infliction of Emotional Distress.

Taking the allegations in the amended complaint in a light most favorable to McAfee, this court finds that her complaint does not allege that Jordan committed any conduct that would subject him to liability. Jordan is an insurance adjuster for Allstate and, in that regard, conducted what appears to be a standard investigation. McAfee's complaint alleges essentially that she was required to participate in that investigation at Jordan's insistence – a requirement to which she agreed when she signed the Homeowner's Insurance Policy at issue in this lawsuit. By the language of her complaint, she seems to have forgotten her responsibility under the policy, as she complains of the Examination Under Oath, the submission of Proof of Loss, the submission of documents, the cause and origin investigation, and the execution of a search warrant.

At a trial on the merits, McAfee would be required to prove that Jordan acted with "'gross negligence, malice, or reckless disregard for [her rights].'" *Gallagher Bassett Servs., Inc. v. Jeffcoat*, 887 So. 2d 777, 784 (Miss. 2004) (Quoting *Bass v. California Life Ins. Co.*, 581 So.2d 1087 (Miss. 1991). Her complaint under federal pleadings standards does not allege an appropriate factual assertion to warrant a trial. McAfee seemingly takes special and peculiar insult at Jordan's

21

questions about her ex-husband's possible involvement in the fire. She says such questions were "lewd" and "defamatory". At the time of this conversation, the fire's origin and cause were not yet finally determined and Jordan apparently was covering all the bases in investigating what, at this stage, was still a "suspicious" fire. Jordan's questions were harmless and instead of bristling over the question, one would think that a now-rendered homeless fire victim would have asked Jordan what prompted him to suspect foul play with the fire. McAfee, instead, terms the question "lewd" and "defamatory". Of course, her ex-spouse's status provides no standing for her to be legally insulted. And, as to the "lewd" conclusion, this court has difficulty connecting the word to the context of Jordan's question.

This court is simply not convinced that a question about the possible source of a suspicious fire is sufficiently outrageous to constitute gross negligence, malice, or reckless disregard for McAfee's rights. This court finds that, taking the allegations of McAfee's amended complaint in a light most favorable to her, she has alleged no conduct by Jordan that would arise to the level of outrageous or intentionally tortious. Accordingly, this court must dismiss McAfee's claims against Jordan and deny McAfee's motion to remand in this aspect.

ii. *Hodges*

McAfee alleged the following causes of action against Hodges in her Amended Complaint: Claim for Bad Faith Failure to Pay Benefits, Bad Faith Denial of Claims, Bad Faith Delay, and Bad Faith Investigation; Bad Faith Adjusting and Gross Negligence, Reckless Disregard; and Negligent and Intentional Infliction of Emotional Distress.

This court also has analyzed McAfee's allegations against Hodges. As stated above "[u]nder Mississippi law, the general rule is that an agent for a disclosed principal incurs no liability for a breach of duty or a contract perpetrated by its disclosed principal and a third party."

*Gray v. U.S. Fid. & Guar.*, 646 F. Supp. 27, 29 (S.D. Miss. April 21, 1986). "Exceptions to this general rule have been made where plaintiff has made allegations which establish a separate and independent tort against the agent." *Id* at 29-30.

Taken in a light most favorable to McAfee, her amended complaint alleges that Hodges "dunned[15]" her. Stated differently, Hodges, as an insurance agent, sought to ensure that McAfee payed her premiums on time. As pointed out by defendants, "actionable negligence cannot exist in the absence of a legal duty to an injured plaintiff." *Foster by Foster v. Bass*, 575 So. 2d 967, 972 (Miss. 1990). This court can find no jurisprudence that provides a duty running from the debt holder to the debtor requiring the debt holder to not seek payment on outstanding debts. This court will not create a new duty out of whole cloth on the facts McAfee has presented in her amended complaint.

The court further finds that McAfee has alleged no conduct that would amount to a separate and independent tort against Hodges.

Accordingly, this court finds that, even taking the allegations in McAfee's amended complaint in a light most favorable to her, that she had failed to plead a cause of action against Hodges.

## V. CONCLUSION AND RULING ON RELATED MOTIONS

McAfee's motions to stay **[Docket nos. 13 and 22]** both had asked this court to stay the proceedings in this matter pending the court's ruling on her motion to remand **[Docket no. 11]**. This court, by entry of the instant order, has rendered moot McAfee's motions to stay **[Docket nos. 13 and 22]**.

---

[15] dun (dən) vb. (17c) To demand payment from (a delinquent debtor) <his creditors are dunning him daily>. — dun, n.
DUN, Black's Law Dictionary (10th ed. 2014)

Finally, Jordan and Hodge's motions to dismiss **[Docket nos. 4 and 19]** asked this court to dismiss McAfee's claims against them for various reasons[16]. This court, by entry of this memorandum opinion and order hereby dismisses both Jordan and Hodges from this litigation without prejudice. Accordingly, this court grants both Jordan and Hodge's motions to dismiss **[Docket nos. 4 and 19]**.

IT IS, THEREFORE, ORDERED that plaintiff's Motion to Remand **[Docket no. 11]** is hereby **DENIED**.

IT IS FURTHER ORDERED that plaintiff's claims against defendants Hodges and defendant Jordan are hereby **DISMISSED WITHOUT PREJUDICE**.

IT IS FURTHER ORDERED that defendant Mac Hodges' Motion to Dismiss First Amended Complaint **[Docket no. 4]** and defendant Wilbur Jordan's Motion to Dismiss First Amended Complaint **[Docket no. 19]** are hereby **GRANTED**.

IT IS FURTHER ORDERED that plaintiff Kimberly McAfee's Motion to Stay Proceedings **[Docket no. 13]** and plaintiff Kimberly McAfee's Supplemental Motion to Stay Proceedings **[Docket no. 22]** are hereby rendered **MOOT**.

IT IS FINALLY ORDERED that this matter is hereby set for a status conference on October 17, 2019, 2019, at 1:30 p.m..

**SO ORDERED this the 29th day of September, 2019.**

**s/ HENRY T. WINGATE**
**UNITED STATES DISTRICT COURT JUDGE**

---

[16] Hodges and Jordan both allege that McAfee's complaint fails: because both Hodges and Jordan are improperly joined; contains shotgun pleadings; and fails to state a claim against either Hodges or Jordan. These are essentially the same arguments made in opposition to the motion to remand.